IN THE COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
COUNTY CIVIL DIVISION

RAYMOND GIBSON,

    Plaintiff,                                                 Case No.: 24-CC-004768

vs                                                       Judge: Hon. Kimberly D. Bocelli

BANK OF AMERICA, N.A.,

    Defendant.
_____/

**<u>FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL</u>**

**COMES NOW** the Plaintiff, Raymond Gibson (hereinafter "Plaintiff"), pro se, and files this First Amended Complaint against Defendant Bank of America, N.A. (hereinafter "Defendant"), and respectfully states as follows:

**<u>INTRODUCTION</u>**

1.     The Plaintiff, an identity theft victim, brings this action against the Defendant for its ongoing, willful, and negligent failures to investigate, verify, and correct erroneous information about the Plaintiff's credit accounts. Specifically, the Defendant has reported two fraudulent accounts (hereinafter "the accounts" or "the fraudulent accounts") on Plaintiff's credit reports since the year 2020. Despite clear evidence that the Plaintiff did not open or authorize these accounts, the Defendant has refused to remove or correct the false information, causing severe harm to Plaintiff's creditworthiness and financial standing and reputation.

2.     More than twenty million people, just under 10% of all adult Americans, are victims of identity theft each year.[1] The computerization of financial systems has led to the rapid

---

[1] Victims of Identity Theft, 2018, 1. U.S. Dept. of Justice, Bureau of Justice Statistics. April 2021, NCJ 256085.

accumulation and exchange of consumer data. Institutions like the Defendant, one of the largest national banking entities, play a crucial role in maintaining the accuracy of this information. However, data mishandling and negligence by furnishers like the Defendant can lead to severe economic and emotional harm for consumers like the Plaintiff. Just as federal law protects consumers by requiring furnishers to correct erroneous credit information under the Fair Credit Reporting Act (FCRA), the Defendant is legally obligated to ensure accurate reporting. The Defendant's refusal to rectify the Plaintiff's fraudulent accounts constitutes a violation of these obligations.

3. Simply put, credit is the lifeblood of the American financial system, granting consumers access to essential financial products, housing, employment, and more. The absence of accurate credit reporting systems leads to disastrous consequences for individuals, as illustrated decades ago in *Am. Fire & Cas. Co. v. Davis,* stating that "[a] man's credit is one of his most valuable assets […]" (146 So. 2d 615, 617 (Fla. 1st DCA 1962)). Consumers, like the Plaintiff, depend on the accuracy and integrity of this system to function in modern society.

4. The Defendant's failure to meet its duties under both federal and Florida law jeopardizes the core principles of credit reporting. By inaccurately reporting these fraudulent accounts for over four years, the Defendant has not only harmed the Plaintiff but has also undermined the integrity of the credit reporting system as a whole. Inaccurate credit reporting is not merely a personal inconvenience for consumers; it directly erodes public trust in the financial system and can have long-lasting consequences for individuals whose financial lives are unjustly harmed.

5. For more than four years, Plaintiff has been subjected to the Defendant's continued inaction, leading to a plummeting credit score, loan denials, higher interest rates, and financial reputational damage. Despite multiple disputes filed with both the Defendant and credit reporting

agencies, the Plaintiff has been met with indifference and deliberate neglect. The Plaintiff has suffered economic loss and severe emotional distress as a direct consequence of the Defendant's willful and negligent actions.

6. Thus, judicial intervention is necessary to address the Defendant's misconduct and prevent further harm to the Plaintiff. Defendant's actions violate both the FCRA (15 U.S.C. § 1681 et seq.) and Florida's consumer protection laws, including the Florida Consumer Collection Practices Act (FCCPA). Without judicial relief, the Plaintiff will continue to suffer irreparable harm due to the Defendant's persistent failure to comply with its legal obligations.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff, Raymond Gibson, is a natural person residing in Lee County, Florida. He is *sui juris* and qualifies as a "consumer" under federal and state consumer protection laws.[2]

8. Defendant, Bank of America, N.A., is a national banking association with its principal place of business in Charlotte, North Carolina. The Defendant is a "furnisher" of credit information as defined by 15 U.S.C. § 1681s-2 of the FCRA. The Defendant conducts substantial business in the State of Florida, including Lee County, and has purposefully availed itself of the privileges and benefits of conducting business in this state, subjecting itself to the jurisdiction of this Court. The Defendant regularly reports information on consumers in Florida to credit reporting agencies and engages in business activity that has a direct impact on residents of Lee County.

9. This Court has subject matter jurisdiction over this action pursuant to Florida Statutes § 34.01 because the amount in controversy falls within the jurisdictional limits of this Court. Additionally, this Court has concurrent jurisdiction to hear claims arising under federal law,

---

[2] Specifically, under 15 U.S.C. § 1681a(c) of the FCRA, a "consumer" is defined as any "individual" for whom a consumer report is prepared. Additionally, under Florida Statutes § 559.55(8) of the Florida Consumer Collection Practices Act (FCCPA), a "consumer" refers to any natural person obligated or allegedly obligated to pay any debt.

including but not limited to the FCRA, as state courts have concurrent authority to adjudicate federal claims under this statute.

10. This Court has personal jurisdiction over the Defendant because said Defendant conducts business in Florida, including within Lee County. The Defendant's actions, which give rise to this lawsuit, caused harm to the Plaintiff within Lee County. Therefore, the Defendant has sufficient minimum contacts with the state of Florida to be subject to this Court's jurisdiction under Florida's long-arm statute, § 48.193, Florida Statutes.

11. Venue is proper in Lee County, Florida, pursuant to Florida Statutes § 47.051, as the cause of action accrued in part within Lee County. The Plaintiff resides in Lee County, and the harm caused by the Defendant's wrongful reporting and negligent handling of Plaintiff's credit disputes occurred within Lee County, where the Plaintiff experienced the adverse effects of the Defendant's actions.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT
## (15 U.S.C. § 1681)

12. The FCRA is a federal law that plays a vital role in protecting consumers from the harm caused by inaccurate credit reporting. Enacted by Congress in 1970, the FCRA sets forth strict guidelines for both consumer reporting agencies (CRAs) and entities, like banks, that furnish information to these agencies. The law was designed to promote the accuracy, fairness, and privacy of consumer information maintained in credit reports, recognizing the critical role credit plays in modern financial systems.

13. Congress explicitly acknowledged that credit reporting affects not only the financial well-being of consumers but also the integrity of the entire banking system. The FCRA requires CRAs and furnishers to adopt procedures that ensure maximum possible accuracy of the information being reported. Failure to do so not only harms individuals but erodes the public trust necessary

for the proper functioning of the financial system. Consumers are entitled to seek redress when furnishers of information, such as the Defendant, fail to meet their obligations under this law.

14. The FCRA also provides special protections for identity theft victims, like the Plaintiff, requiring CRAs and furnishers to block, remove, or correct fraudulent information when a consumer reports identity theft. These protections include blocking inaccurate information, placing fraud alerts, and allowing consumers to initiate security freezes on their credit reports to prevent further misuse.

15. For consumers, the FCRA imposes twin duties on CRAs and furnishers: first, they must take steps to ensure the maximum possible accuracy of consumer information; second, they must conduct thorough investigations when consumers dispute inaccuracies. These provisions ensure that consumers, including the Plaintiff, can rely on fair and accurate credit reporting to access housing, loans, and employment—elements central to financial security and well-being. The Defendant's failure to uphold these duties under the FCRA justifies the judicial intervention being sought in this case.

### SUMMARY OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT
### (Florida Statutes § 559.55)

16. The FCCPA, codified under Florida Statutes § 559.55 *et seq.*, is designed to protect consumers from abusive, deceptive, and unfair collection practices by creditors, debt collectors, and other entities involved in collecting consumer debts. Similar to the federal Fair Debt Collection Practices Act (FDCPA), the FCCPA imposes strict regulations on the manner in which debt collection is conducted, ensuring fairness and transparency.

17. Under the FCCPA, it is unlawful for any person or entity to engage in conduct that involves using threats, harassment, misrepresentations, or other abusive tactics to collect a debt. This includes furnishing false or misleading information to credit reporting agencies or failing to

accurately report the status of debts in collection. The FCCPA applies not only to third-party debt collectors but also to original creditors, such as banks, making it broader in scope than the FDCPA.

18. The FCCPA mainly prohibitions against (1) Communicating false information regarding a debt (Fla. Stat. § 559.72(9)); (2) Disclosing information about the debt to third parties, other than the consumer, without consent; (3) Using threats or harassment in the process of collecting a debt; and (4) Misrepresenting the amount or legal status of a debt.

19. In the instant case, the Plaintiff asserts that the Defendant violated the FCCPA by willfully reporting false and inaccurate credit information to credit reporting agencies and by failing to correct those inaccuracies despite knowing the disputed accounts were fraudulent. This misconduct has caused harm to the Plaintiff's financial standing, as the erroneous reporting has impacted his creditworthiness and caused undue distress.

20. The FCCPA provides consumers, like the Plaintiff, with the right to seek actual damages, statutory damages, attorney's fees, and costs when violations occur. It is a vital tool in the protection of consumers from harmful practices that undermine their credit reputation and financial stability.

## FACTUAL ALLEGATIONS

### i. *Identity Theft Incident*

21. The Plaintiff is a 27-year-old Cuban American, former U.S. Marine, who immigrated to the United States at the age of 16. Determined to succeed in his new country, the Plaintiff overcame significant language and cultural barriers, ultimately graduating from high school with honors. Through sheer perseverance and without family support, he earned dual degrees in Criminal Justice and Psychology, a testament to his relentless pursuit of the American dream. Further, the Plaintiff is a seasoned paralegal and is currently pursuing a Juris Doctorate at Nova Southeastern

University's Shepard Broad College of Law, which has equipped him with substantial knowledge of legal principles, ensuring that his claims are legitimate, substantiated, and far from frivolous.

22. In early 2020, at the age of 23, the Plaintiff entered into a whirlwind romance with a woman ten years older than him, a relationship that quickly turned to marriage. Blinded by his affection, the Plaintiff failed to see that his wife had ulterior motives. She became aware of the Plaintiff's financial achievements, and deceived him into believing they had a future together. Three months into the marriage, the Plaintiff began noticing troubling behavior from his wife, raising suspicions about her intentions.

23. Unbeknownst to the Plaintiff, while he was undergoing rigorous training as a U.S. Marine from August to December 2020—during which he had no access to a phone or other means of communication—his wife initiated a series of fraudulent activities in his name. She used the last known address they shared to open multiple credit card accounts without his consent, exploiting his absence and financial trust.

24. On or about June 30, 2020, and December 22, 2020, respectively, the Defendant began reporting two fraudulent accounts on Plaintiff's credit report. These accounts, totaling over $55,000, were never opened, authorized, or utilized by the Plaintiff. Despite providing clear evidence to both the Defendant and the credit reporting agencies CRAs, the Plaintiff's efforts to dispute and resolve the fraudulent accounts have been repeatedly ignored.[3]

---

[3] Notably, the Plaintiff also suffered additional financial harm due to the identity thief's misuse of his checking account with the Defendant. During the height of the COVID-19 pandemic, the Plaintiff's ex-wife fraudulently applied for an Small Business Administration (SBA) relief loan under the Plaintiff's name and had the loan proceeds directly deposited into Plaintiff's checking account. These funds were subsequently withdrawn and spent by the thief, the Plaintiff's ex-wife, all while impersonating the Plaintiff. After a thorough investigation, the SBA concluded that the Plaintiff was not liable for the loan. Despite this clear finding of fraud, the Defendant continues to assert that the Plaintiff is liable for the fraudulent accounts solely based on the fact that his name and former address were associated with them. This rationale fundamentally misunderstands the nature of identity theft—criminals, by definition, use the identifying information of their victims to commit fraud under their name.

25.     Upon discovering these unauthorized accounts, the Plaintiff immediately filed a police report, filed an FTC Identity Theft Report, and initiated formal disputes with the Defendant and the CRAs, including Equifax, Experian, and TransUnion. The Plaintiff provided extensive documentation proving that the accounts were fraudulently opened during his absence and had no connection to him. Nevertheless, the Defendant failed to conduct a reasonable investigation and persisted in reporting these accounts as valid debts.

26.     The Defendant had a statutory obligation under the FCRA to conduct a thorough and accurate investigation upon receiving Plaintiff's disputes. The Defendant not only failed to meet this legal duty but also exhibited willful negligence by rubber-stamping the disputed accounts without verifying their legitimacy. The ongoing reporting of these fraudulent accounts constitutes a blatant violation of the FCRA, which mandates accuracy and proper verification of credit information.

27.     As a result of the Defendant's continued negligence, the Plaintiff's credit score has plummeted, making it virtually impossible for him to secure loans, housing, or favorable interest rates. His financial reputation has been unjustly tarnished, subjecting him to economic hardship and personal anguish. The emotional toll of constantly defending his financial integrity against fraudulent reports has caused the Plaintiff significant stress, anxiety, and reputational harm.

28.     Beyond the FCRA violations, the Defendant's actions also constitute a breach of the Florida Consumer Collection Practices Act (FCCPA). By continuously reporting inaccurate credit information, the Defendant engaged in unlawful debt collection practices under § 559.72(9), Florida Statutes. The Defendant's refusal to acknowledge or resolve the Plaintiff's disputes exacerbates the harm done.

29. The Plaintiff has suffered ongoing damage to his credit score, financial reputation, and overall well-being as a direct result of the Defendant's reckless indifference and negligence. The Defendant's continuous reporting of fraudulent accounts has led to multiple denials of credit, unfavorable loan terms, and severely elevated interest rates. Beyond the financial harm, the Plaintiff has endured significant emotional distress, anxiety, and reputational harm, exacerbated by the Defendant's refusal to correct the errors or acknowledge the severity of the situation.

30. The Plaintiff has been denied housing and other financial opportunities due to his tarnished credit report, which continues to inaccurately reflect the fraudulent debts. Each time a third party accesses his credit report, the Plaintiff must explain and defend against the false reports, resulting in further emotional distress and harm to his personal and professional reputation.

ii. *Plaintiff's Disputes with the Defendant*

31. Since discovering the fraudulent accounts on his credit report in late December 2020, the Plaintiff has continuously disputed the accuracy of the information reported by the Defendant. From the time Plaintiff became aware of these issues, he has taken diligent and immediate action to dispute the fraudulent accounts directly with both the Defendant and the CRAs. Despite his repeated efforts to correct the inaccuracies, the Defendant has failed to adequately address or resolve these disputes.

32. Over the course of more than three years, the Plaintiff has engaged in an ongoing and persistent effort to communicate with the Defendant regarding the fraudulent nature of the accounts. Each time Plaintiff submitted a dispute, the Defendant either ignored the dispute, failed to conduct a reasonable investigation, or merely confirmed the false information without any substantive review. The Defendant's continued failure to correct or remove the fraudulent accounts

from Plaintiff's credit report constitutes a willful disregard for its statutory obligations under the FCRA.

33. Despite receiving multiple dispute submissions from the Plaintiff, the Defendant has refused to investigate the fraud adequately. In fact, each time Plaintiff has contacted the Defendant, he has been met with indifference and an inadequate response. This negligent handling of Plaintiff's disputes has exacerbated the damage to his credit score, economic standing, and emotional well-being, leaving him with no recourse other than to seek judicial intervention.

34. The Plaintiff has consistently provided the Defendant with all necessary documentation to prove the fraudulent nature of the accounts, including police reports, correspondence with the CRAs, and detailed explanations of the identity theft. Despite having ample evidence, the Defendant has refused to make any meaningful attempts to correct its reporting. This ongoing and continuous failure to act has caused the Plaintiff untold harm, both financially and emotionally.

### iii. *Defendant's Unreasonable Dispute Reinvestigation in Violation of the FCRA*

35. Upon information and belief, the Defendant verified the disputed information as accurate to all CRAs to which the Defendant reports.

36. For the last four years, the Plaintiff received multiple letters from the Defendant stating that it found the accounts to be accurate and would not be taking any action on the Plaintiff's disputes.

37. Further, the Plaintiff received numerous letters from the Defendant stating that it was unable to approve the Plaintiff's dispute claim because statements have been mailed to the address provided and payments have been made.

38. Based on the aforementioned facts, the Defendant clearly failed to adequately review all of the information provided to it by the Plaintiff.

39. The Defendant violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed fraudulent accounts were the product of identity theft.

iv. *Defendant's Violation of the FCCPA*

40. The Defendant is attempting to collect a fraudulent debt from the Plaintiff.

41. Upon information and belief, the Defendant has actual and/or imputed notice that the Plaintiff disputed the debt the Defendant is attempting to collect, when the Plaintiff disputed the accounts directly with the Defendant by telephone call, letter, and thought the Consumer Financial Protection Bureau, and when the Plaintiff disputed the debt through the CRAs.

42. The Defendant violated the FCCPA by continuing to contact the Plaintiff after having knowledge that the debt did not belong to him, in violation of the FCCPA.

43. The Defendant is well aware of its obligations under the FCCPA.

44. The Defendant's violations of the FCCPA did not result from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid such errors.

45. As a direct result of the Defendant's unlawful conduct, the Plaintiff has been harmed. Each and every attempt to collect on these debts that the Plaintiff has abundantly disputed, forces the Plaintiff to relive and compound the pain, stress, and suffering from the consequences of having been the victim of identity theft.

46. Each and every attempt to collect the debt from the Plaintiff by the Defendant has caused the Plaintiff shock and frustration and has further caused the Plaintiff to come to the devastating

realization that no matter what the Plaintiff did, the Plaintiff will continue to suffer the consequences of being a victim of identity theft.

  **v.**  ***Plaintiff's Damages***

47.  Undeniably, the Plaintiff took every appropriate action he was required to do upon discovering he was a victim of identity theft. He promptly filed multiple disputes with the Defendant and relevant CRAs, including Equifax, Experian, and TransUnion, while also submitting a police report and an FTC Identity Theft Report. The Plaintiff clearly identified his ex-wife as the individual responsible for the fraudulent activity and provided all necessary supporting documentation.

48.  Despite these actions, the Defendant failed to remove the fraudulent accounts or adequately investigate the Plaintiff's claims. As a result, the Plaintiff has endured substantial harm. The Defendant's failure to correct its records has severely damaged the Plaintiff's credit score, leading to loan denials, higher interest rates, and loss of financial opportunities. Moreover, the Plaintiff has spent countless hours over the last four years disputing these fraudulent accounts, to no avail.

49.  The Plaintiff's personal life has also been negatively impacted. He has experienced significant stress, anxiety, and emotional distress, disrupting his daily activities, personal relationships, and professional life. Sleepless nights and constant worry over the possibility of collection efforts for fraudulent debts have taken a serious toll on the Plaintiff's well-being.

50.  The Defendant's continued negligence has caused irreparable harm to the Plaintiff's financial reputation, emotional state, and quality of life. Judicial intervention is necessary in this case to remedy these ongoing damages and put an end to the Defendant's misconduct once and for all.

## COUNT I – VIOLATION OF THE FAIR CREDIT REPORTING ACT

51. The Plaintiff re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 50 of this First Amended Complaint as if fully set forth herein.

52. Under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), furnishers of credit information, such as the Defendant herein, have a duty to:

    a) Conduct a reasonable investigation upon receiving a dispute regarding the accuracy of information.
    b) Review all relevant information provided by the CRAs about the dispute.
    c) Report the results of the investigation to the CRAs.
    d) Correct or delete any inaccurate or incomplete information found during the investigation.
    e) Cease reporting information if the investigation cannot verify its accuracy.

53. In the instant case, the Defendant failed to comply with these obligations. Despite the Plaintiff's repeated disputes regarding the fraudulent accounts, the Defendant negligently or willfully:

    a) Failed to conduct a reasonable investigation into the disputed accounts.
    b) Continued to report inaccurate and false information about the Plaintiff to the CRAs.
    c) Failed to correct or delete the inaccurate information despite being informed multiple times that the accounts were fraudulent.

54. As a result of the Defendant's violations of the FCRA, the Plaintiff suffered harm, including but not limited to:

    a) Damaged creditworthiness, as the false accounts lowered the Plaintiff's credit score and led to unjust denials of credit.
    b) Economic harm from higher interest rates and being unable to access favorable loan terms.
    c) Emotional distress and anxiety caused by the Defendant's negligence and the continued dissemination of false information.

55. The Defendant's actions were willful, reckless, and indifferent to the Plaintiff's rights, further entitling the Plaintiff to compensatory as provided under 15 U.S.C. § 1681n.

56. Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs under 15 U.S.C. §§ 1681n and 1681o for Defendant's willful and negligent noncompliance with the FCRA.

## COUNT II – DEFAMATION

57. The Plaintiff re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 50 of this First Amended Complaint as if fully set forth herein.

58. In Florida, a defamation claim requires:

    a) A false statement of fact;
    b) Published or communicated to a third party;
    c) Negligently or intentionally made;
    d) Resulting in damages to the Plaintiff.

59. The Defendant made false and defamatory statements about the Plaintiff by publishing and communicating to the CRAs that the Plaintiff was responsible for two credit card accounts. These statements were false because the Plaintiff never opened or authorized these accounts, and the Defendant knew or should have known that the Plaintiff never opened or authorized these accounts.

60. The Defendant made these statements negligently and with reckless disregard for their truth or falsity, despite having received the Plaintiff's disputes and clear evidence that the accounts were fraudulent.

61. The Defendant's false statements were published to third parties, including Equifax, Experian, TransUnion, and any creditors or entities who accessed the Plaintiff's credit report.

62. As a direct result of the Defendant's false statements, the Plaintiff's reputation and creditworthiness were damaged. The Plaintiff suffered economic losses, including but not limited to the denial of credit and higher interest rates, and emotional distress due to the harm to his personal and financial reputation.

63. The Plaintiff is entitled to damages for harm to his reputation, emotional distress, economic losses, and punitive damages due to Defendant's willful disregard for Plaintiff's rights.

### COUNT III – VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA)

64. The Plaintiff re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 50 of this First Amended Complaint as if fully set forth herein.

65. The FCCPA prohibits creditors from engaging in abusive and deceptive practices, including:

   a) Communicating false information about a debt to third parties (such as CRAs) under § 559.72(9), Florida Statutes.
   b) Failing to investigate disputes and falsely claiming that debts are owed when they are not.

66. By continuing to report false information regarding the fraudulent accounts as debts owed by the Plaintiff, despite the Plaintiff's repeated disputes, the Defendant engaged in unfair debt collection practices in violation of § 559.72(9).

67. The Defendant willfully or negligently ignored the Plaintiff's valid disputes and failed to properly investigate or correct the erroneous information. This constitutes an unlawful collection practice designed to mislead creditors and others into believing the Plaintiff owed the debt.

68. The Plaintiff is entitled to statutory damages, actual damages, attorney's fees, and costs for Defendant's violation of the FCCPA.

### COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

69. The Plaintiff re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 50 of this First Amended Complaint as if fully set forth herein.

70. Under Florida law, a Plaintiff bringing forth claims of IIED must meet the following elements:

   a) Extreme and outrageous conduct;
   b) Intent or recklessness in causing emotional distress;
   c) Severe emotional distress suffered by the Plaintiff.

71. The Defendant's continuous failure to rectify the fraudulent accounts, its refusal to communicate with Plaintiff, and its willful neglect in reporting false credit information constitutes extreme and outrageous conduct that is beyond the bounds of decency in a civilized society.

72. The Defendant's conduct was intentional or reckless, and it caused the Plaintiff to suffer severe emotional distress, anxiety, and a sense of financial insecurity. The damage to the Plaintiff's creditworthiness and ongoing struggle to rectify the fraudulent accounts has caused significant mental anguish.

73. The Plaintiff is entitled to compensatory damages for the emotional distress caused by Defendant's intentional and reckless conduct.

## DEMAND FOR JURY TRIAL

74. The Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff, Raymond Gibson, respectfully prays for the following relief from this Honorable Court:

   a) That the Court grant injunctive relief requiring the Defendant to immediately cease reporting the fraudulent accounts to the credit reporting agencies and to permanently remove the accounts from Plaintiff's credit report;

   b) That the Court direct the Defendant to conduct a thorough, reasonable, and good-faith investigation into Plaintiff's disputes, in compliance with the FCRA and other relevant laws;

   c) That the Court award compensatory damages to Plaintiff for the economic losses suffered as a direct result of the Defendant's actions, including but not limited to higher interest rates, credit denials, and lost financial opportunities;

   d) That the Court award compensatory damages for emotional distress and mental anguish resulting from Defendant's conduct in falsely reporting the accounts;

e) That the Plaintiff be awarded statutory damages for willful and negligent violations of the FCRA, pursuant to 15 U.S.C. §§ 1681n and 1681o, and statutory damages under the Florida Consumer Collection Practices Act (FCCPA), pursuant to Fla. Stat. § 559.77;

f) That the Plaintiff be awarded reasonable attorney's fees and costs incurred in bringing this action, as permitted under the FCRA and FCCPA, in the event the Plaintiff retains counsel;

g) That the Plaintiff be awarded pre-judgment and post-judgment interest on all amounts awarded as allowed by law; and

h) That the Court grant such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted this 29th day of September, 2024.

By: */s/ Raymond Gibson*
Raymond Gibson
*Pro Se Plaintiff*
9728 Mendocino Dr.
Fort Myers, FL 33919
(561) 566-8030
raymond.gibson1211@gmail.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 29th day of September 2024, the foregoing was electronically filed with the Clerk of this Court via the Florida Courts E-Filing Portal, which will serve a notice of electronic filing upon the following counsel for Defendant:

Jason R. Bowyer, Esq.
Primary Email: jbowyer@mcguirewoods.com
Secondary Email: fladmin@mcguirewoods.com

and

E. Paul Cuffe, Esq.
Primary Email: pcuffe@mcguirewoods.com
Secondary Email: flservice@mcguirewoods.com

50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
(904) 798-3200 / (904) 798-3207 (fax)

By: */s/ Raymond Gibson*
Raymond Gibson
*Pro Se Plaintiff*